## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| BENDER SHIPBUILDING & REPAIR ) | |
| CO., INC., ) | |
| ) | |
|     Debtor. ) | |
| ) | |
| ) | |
| BENDER SHIPBUILDING & REPAIR ) | |
| CO., INC., ) | |
| ) | |
|     Appellant, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-0653-CG-M |
| ) | |
| SEACOR MARINE, LLC and ) | |
| REGIONS BANK, ) | |
| ) | |
|     Appellees. | |

### ORDER

    This is an appeal from an order in Adversary Proceeding 09-01064, within Appellant's current bankruptcy case, Case No. 09-12616. This court has appellate jurisdiction over this case pursuant to 28 U.S.C. § 158(a)(1). Appellant asserts that the United States Bankruptcy Court Judge erred in granting defendant Seacor Marine, LLC's ("Seacor") motion to dismiss the debtor's complaint seeking an injunction against Seacor from pursuing a draw on the letter of credit based upon Appellant's involuntary bankruptcy and against Regions Bank ("Regions") from paying on the letter of credit on the basis of Seacor's presentment. This court finds that Appellant has failed to show a substantial likelihood of success on the merits. As such, the decision of the United States Bankruptcy Court is due to be AFFIRMED.

**BACKGROUND**

The facts of this case are generally not in dispute.  In September 2007, Bender Shipbuilding & Repair Co. ("Bender") and Seacor entered into a shipbuilding contract ("Bender/Seacor Contract") whereby Bender was to build six vessels for Seacor.  (Doc. 1-1, p. 29).  Bender's performance under that contract was secured by a letter of credit in the amount of $5,000,000 issued by Regions.  The contract states that "in the case of insolvency of [Bender]... [Seacor] shall be entitled to make full drawing on the Letter of Credit." (Id. at 88).  The contract also provides that Seacor may draw upon the letter of credit in full "by presentation of a statement [to Regions] by [Seacor] stating either of the following:"

> (1) "that an undisputed event of default by [Bender] has occurred and is continuing under Article 12(a) hereof and [Bender] has been notified in writing of such default and all applicable cure and/or grace periods with respect to such default have expired"...

(Id., at 87).

Article 12(a) of the contract provides an ipso facto provision that states that Seacor may, by written notice to Bender, "terminate all or any part of this Contract" if "one or more of its creditors files a petition against [Bender] seek[ing] relief under any bankruptcy or insolvency law, which petition shall not have been dissolved within a period of ten (10) days from the filing of the petition in that court."  (Id., at 58-59).

Regions issued a standby letter of credit as required by the Bender/Seacor Contract.  (Id. at 93-94).  In this document, Regions acknowledges that Seacor may draw on this letter of credit if a "statement purportedly signed by an authorized official of Seacor" provides, in relevant part, that:

> The undersigned, an officer or authorized agent of Seacor [], hereby certifies that an undisputed event of default by Bender [] has occurred and is continuing under

>Article 12(a) of [the Bender/Seacor Contract]... and that [Bender] has been notified in writing of such default and all applicable cure and/or grace periods with respect to such default have expired..."

(Id. at 93).

On June 9, 2009, Bender was placed in involuntary bankruptcy. (See Doc. 1-1, p. 99).

On June 22, 2009, Seacor sent a letter to Bender which provided the following:

>We are advised that creditors of Bender [] petitioned for bankruptcy on June 10, 2009 in the United States Bankruptcy Court in Mobile, Alabama. More than ten (10) days have elapsed since the filing of the petition and it has not been dissolved.
>
>Bender [] is therefore in default under Article 12(a) of the above-referenced contract and such default is continuing.
>
>(Doc. 1-1, p. 19).

On that same day, Seacor made a demand on Regions by presentation of a sight draft for the entire amount of the letter of credit based on the certificate of Seacor's authorized agent certifying that "an undisputed even of default by Bender [] has occurred and is continuing under Article 12(A) of [the Bender/Seacor contract] and [Bender] has been notified in writing of such default and all applicable cure and/or grace periods with regard to such default have expired." (Doc. 1-1, p. 109).

On June 23, 2009, Seacor filed an action against Regions in the United States District Court for the Northern District of Alabama seeking "a declaratory judgement that defendant Regions [] is required to honor Seacor's June 22, 2009 draw request under a $5 million letter of credit..." because "Seacor has certified to Regions that an event of default has occurred under" the Bender/Seacor Contract "– namely the filing of an involuntary bankruptcy petition against Bender [] that was not dissolved within ten days of the filing of the petition – Seacor is entitled

3

to an immediate payment of $5 million from Regions under the clear terms of the Letter of Credit." (Doc. 1-1, pp. 21-22).

On June 24, 2009, Bender filed a verified complaint in the Bankruptcy Court for the Southern District of Alabama requesting "a declaratory judgment that Seacor's notice of default is void and an injunction enjoining Seacor from pursuing a draw on the letter of credit based upon that alleged default and enjoining Regions Bank from paying on the letter of credit on the basis of Seacor's presentment dated June 22, 2009." (Doc. 1-1, p. 13).

On that same date, Bender filed a request for a temporary restraining order and preliminary injunction asking the bankruptcy court to enjoin Seacor from pursuing payment of the $5,000,000 letter of credit drawn on Regions and to enjoin Regions from honoring Seacor's presentation. (Doc. 1-1, p. 111). In support of this request, Bender made the following argument:

> As grounds, Plaintiff shows that the presentation of the letter of credit based on the alleged default in the Defendant, Seacor[]'s contract with Plaintiff due to Plaintiff's failure to dissolve an involuntary bankruptcy petition filed against Plaintiff within ten (10) days of the filling of the same is contrary and violative of Section 365(e)(1) of the Bankruptcy Code and that Plaintiff will suffer immediate and irreparable injury, loss, or damage in the absence of a temporary restraining order...

(Id., p. 111-112).

On June 26, 2009, the bankruptcy judge entered oral findings of facts and conclusions of law denying Bender's request for a temporary restraining order. (Doc. 2-1, p. 77). First, the bankruptcy judge concluded that "Bender has not sustained its burden that it's likely to succeed on the merits on the legal arguments it is making..." (Id., p. 84). Second, the bankruptcy judge concluded that Bender had shown that it would suffer irreparable harm if the injunction were not

allowed and that Seacor would not suffer irreparable harm if the injunction were allowed. (Id., pp. 85-86). Third, the bankruptcy judge concluded that the public policy consideration weighs in favor of Seacor as "the interests of the public in the certainty of use of financial instruments and payment under them, as the cases call it, the integrity of the market, is an important public consideration." (Id., pp. 85-86). Since two of the four factors weighed in favor of denying Bender's request for a temporary restraining order, the bankruptcy court denied Bender's motion for a temporary restraining order. A written order was entered on June 29, 2009. (Id., p. 129).

On July 10, 2009, Seacor filed a motion to dismiss Bender's verified complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim for which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 1-1, pp. 133-134). On July 24, 2009, the bankruptcy court denied Seacor's motion to dismiss under Rule 12(b)(1) for lack of jurisdiction and granted with prejudice Seacor's motion to dismiss under Rule 12(b)(6) for failure to state a claim. (Doc. 1-1, p. 207).

As to Rule 12(b)(1), the bankruptcy court reasoned that "if what [Bender] asserts is true, which I must assume for this motion, a draw on the letter of credit will trigger immediate liability of Bender to Regions as opposed to the disputed and contingent liability it now has to Seacor. And this will impact its ability to reorganize." As a result, the bankruptcy court concluded that "[t]his is a clear issue in the bankruptcy case because it, 'alters the Debtors rights, options, and/or freedom of action and could conceivably affect its ability to reorganize'" thus "this Court has subject matter jurisdiction over this adversary under its related-to jurisdiction under 28 U.S.C. Section 1334(b)." (Doc. 2-1, pp. 188-190).

In regards to Rule 12(b)(6), Bender argued that it had a claim for relief based upon

Bankruptcy Code Sections 365(e)(1) and/or 362(a)(6).[1]  After first concluding that the Bender/Seacor Contract was an executory contract, the bankruptcy court then turned to 11 U.S.C. § 365(e)(1) which provides that "an executory contract...of the debtor may not be terminated... solely because of a provision in the contract... that is conditioned on the commencement of a case under this title."  In light of this provision, the bankruptcy court stated that there was an issue of whether Seacor can "use [the ipso facto] clause not against the Debtor directly, but against a third party who as soon as the letter of credit is drawn, becomes a creditor in Bender's estate with different rights and remedies than Seacor." (Doc. 2-1, p. 192).  Framing the issue in this context, the bankruptcy court found only one case directly on point, In re Metrobility Optical Systems, Inc., 268 B.R. 326 (Bankr.D.N.H. 2001), which "prevented a lessor from drawing on [a letter of credit] when the Debtor's sole default was filing bankruptcy" because "'the Code invalidates ipso facto clauses as the basis for default and, thus, as a matter of

---

[1] Specifically, Bender asserts that (1) "under bankruptcy law the sole ground upon which Seacor claims a right to terminate the contract, the filing of a bankruptcy petition is of no affect in the bankruptcy case because of Section 365(e)(1)" and that (2) "Section 362(a)(6) prohibits actions of creditors, 'to collect, assess or recover a claim,' against a Debtor without relief from the stay."  In light of these two violations of bankruptcy law, Bender argues "that Seacor could not issue its notice of default due to this provision and the [letter of credit] requires a notice have been given to Bender prior to any draw on the [letter of credit]", and "[t]he notice given by Seacor, according to Bender, violated the automatic stay and was therefore void." (Doc. 2-1, p. 186). Bender further argues that because that notice was void, the bankruptcy court and "Regions should treat the situation as if the event did not occur." (Id., p. 190).
  Regions joined Benders' arguments and also maintained that "the Alabama Uniform Commercial Code which governs here at 7-5-109, allows the bank to refuse to honor a draw request if the certificate seeking the draw contains a false statement.  The statement here is that it gave a notice of default and/or that there was a default, that is the false statement." (Id., p. 187).
  On the other hand, Seacor argued "that it is entitled to payment on the irrevocable standby letter of credit because the condition precedent to the draw set out in the contract of Seacor and Bender has occurred.  Bender did not get the involuntary bankruptcy case that was filed against it dismissed within ten days." (Id., p. 190).

federal bankruptcy law the Debtor was not in default.'" (Id., pp. 192-193). Disagreeing with that court, the bankruptcy court reasoned that the "fiction of invalidation [in the bankruptcy case] does not extend beyond the bankruptcy case to other parties and contracts" thus "[t]he [ipso facto] provision is still there and enforceable outside the case." (Id., p. 193). Due to this "independence principle," the bankruptcy court concluded that "Bender's claim for relief under 365(e)(1) fails as a matter of law." (Id., p. 196).

The bankruptcy court provided similar reasoning in regards to 11 U.S.C. § 362(a)(6), a provision which prohibits actions of creditors, "to collect, assess or recover a claim," against a debtor without relief from the stay. The bankruptcy court concluded that "[t]he notice of default serves two purposes in this case." First, "it notifies Bender that paragraph 12A has been breached, and establishes the grounds to collect funds from an independent source." Second, "it serves as grounds for Seacor to take certain actions in regard to its contract with Bender." The bankruptcy court found that the first purpose "could violate the stay" but that the second purpose "is satisfying the requirement for collection of non-debtor property" and "such a notice standing alone would not violate the stay." (Doc. 2-1, p. 198). Thus, the bankruptcy court determined the issue is "[i]f the notice is void for one purpose", as any action in the Eleventh Circuit that violates the automatic stay is void, "is it void for all purposes[?]" The bankruptcy court concluded that "[c]onsistent with the view of the law [the court] expressed about 11 U.S.C. Section 365(e)(1), [the court] believe[s] the same dichotomy is true in this instance." (Id., p. 199). The court made the following observations:

> It is clear that Seacor cannot proceed in the bankruptcy case to take action to recover its alleged claim against Bender without relief from the stay. Seacor, depending on the facts and a motion I do not have in front of me, may have violated the stay as to Bender by not seeking relief from stay before it issued its

7

> notice of default. The notice <u>vis a vis</u> Seacor and Bender may be ineffective and not allowable. However, there is no stay that applies to actions between Seacor and Regions.
>
> If Seacor gave the notice to Bender, it can certify that it did so. If the notice violated Bender's stay, that's a separate issue between Bender and Seacor, not an issue for Seacor and Regions Bank. Seacor will merely have to suffer the consequences, if any, if Bender seeks relief for a stay violation.
>
> I don't need to mix stay litigation with this letter of credit litigation.
>
> (<u>Id.</u>, p. 199-200).

Therefore, the bankruptcy court concluded "that Bender's request for a preliminary injunction on Section 362(a)(6) grounds fails to state a claim and must be dismissed." (<u>Id.</u>, p. 200).

In sum, since Bender's 11 U.S.C. § 105 argument was "grounded upon the propriety of relief under Section 365(e)(1) and 362(a)(6)," the bankruptcy court rejected that argument for the same reasons above. (Doc. 2-1, p. 200).

After joining all of Bender's arguments, Regions added that "the Alabama Uniform Commercial Code which governs here at 7-5-109, allows the bank to refuse to honor a draw request if the certificate seeking the draw contains a false statement. The statement here is that it gave a notice of default and/or that there was a default, that is the false statement." (<u>Id.</u>, p. 187). The bankruptcy court concluded that this argument must be denied "[b]ecause I have concluded that Section 365(e)(1) and 362(a)(6) do not prohibit Seacor from asserting the default as against the [the letter of credit], or as it pertains to the [letter of credit.]" (Doc. 2-1, p. 200).

On August 8, 2009, Bender filed a notice of appeal under 28 U.S.C. § 158(a) from the bankruptcy court's order dismissing its complaint under Rule 12(b)(6). (Doc. 1-1, p. 208).

## DISCUSSION

Appellant Bender asserts that the United States Bankruptcy Court's ruling was in error

because §§ 365(e)(1) and 362(a)(6) of the Bankruptcy Code provide a cause of action for an injunction under 11 U.S.C. § 105 against Seacor from demanding payment on the letter of credit based solely on the debtor's failure to cause the involuntary bankruptcy petition to be dissolved within ten days and supported by a certification containing an affirmation that notice of default was given to the debtor after the filing of the involuntary petition. (Doc. 6, pp. 1-2). Bender's contentions address the Bankruptcy Court's conclusions of law and, thus, will be reviewed on a de novo basis. Englander v. Mills (In re Englander), 95 F.3d 1028, 1030 (11th Cir. 1996).

## I. Standard of Review

"[W]hen considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged by [the plaintiff] in the complaint as true." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). "Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions." Id. (citing Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

> In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. Id.; see also Iqbal, 129 S.Ct. at 1951(stating conclusory allegations are "not entitled to be assumed true").
>
> A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. See Iqbal, 129 S.Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561-62, 570, 127 S.Ct. 1955, 1968-69, 1974, 167 L.Ed. 929 (2007)(retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In Twombly, the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly,

> 550 U.S. at 555, 127 S.Ct. at 1965. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S.Ct. at 1964-65 (internal citations omitted and emphasis omitted).
>
> ... A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The mere possibility the defendants acted unlawfully is insufficient to survive a motion to dismiss. Id. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570, 127 S.Ct. at 1974.
> Sinaltrainal, 578 F.3d at 1260-1261.

In its verified complaint, Bender "requests... an injunction enjoining Seacor from pursuing a draw on the letter of credit based upon that alleged default and enjoining Regions Bank from paying on the letter of credit on the basis of Seacor's presentment dated June 22, 2009." (Doc. 1-1, p. 13). A district court may grant preliminary injunctive relief if the movant shows the following: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the damage the injunction would cause the non-movant; and (4) the injunction would not be adverse to the public interest. Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the movant must show actual success on the merits instead of a likelihood of success on the merits. Siegel v. LePore, 234 F.3d 1163, 1213 (11th Cir. 2000). The movant must demonstrate irreparable injury and the absence of an adequate remedy at law. Id..

## II. Substantial Likelihood of Success on the Merits

Section 105 provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bender asserts that § 105 provides a bankruptcy court "with the authority to enjoin Seacor from violating the provisions of Section 365(e) and Section 362(a) of the Bankruptcy Code" (Doc. 6, p. 14) and that the facts in this case warrant an injunction for this court to compel compliance with the bankruptcy code.

### A. 11 U.S.C. § 365(e)

Bender argues that "Seacor's declaration of a default under the Bender/Seacor Contract due to the filing of the involuntary bankruptcy petition against Bender violates Section 365(e) because Seacor terminated or modified that contract solely because of the involuntary petition filing, an action that is prohibited by the express language of Section 365(e)." Therefore, "[t]he Bankruptcy Court has the authority to use its Section 105(a) powers to enjoin Seacor from openly and defiantly violating this provision of the Bankruptcy Code." (Doc. 6, p. 16).

> Section 365(e)(1) of the Bankruptcy Code provides that
>
> an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on... (B) the commencement of a case under this title...
>
> 11 U.S.C. § 365(e)(1)

This subsection "prevents an executory contract or lease from being automatically terminated or modified by virtue of the other party's filing for bankruptcy" thus "[t]he aim is to protect the right of the bankruptcy estate to adopt, reaffirm and continue a contract or lease where this will

11

serve the estate's interests." <u>Liberty Mut. Ins. Co. v. Greenwich Ins. Co.</u>, 417 F.3d 193, 198 (1st Cir. 2005).  In light of this purpose, an issue arises as to whether Seacor can use an <u>ipso facto</u> clause not against the debtor directly, as this is not allowed under § 365(e)(1), but against a third party "who as soon as the letter of credit is drawn, becomes a creditor in Bender's estate with different rights and remedies than Seacor." (Doc. 2-1, p. 192).

There is only one case directly on point, <u>In re Metrobility Optical Sys., Inc.</u>, 268 B.R. 326 (Bankr. D.N.H. 2001).  In <u>Metrobility</u>, a debtor/lessee and a lessor entered into a lease agreement.  The lease agreement contained provisions referencing an irrevocable letter of credit which the debtor/lessee and lessor executed simultaneously with the lease agreement.  The Bank of New Hampshire issued this irrevocable letter of credit in favor of the lessor.  Pursuant to the letter of credit, in order to draw upon it, the beneficiary lessor must certify to the bank that the debtor/lessee had failed to perform one of its obligations under the lease, a failure which occurs under the lease agreement when the debtor/lessee files for bankruptcy.  The debtor/lessee thereafter filed for bankruptcy, and the lessor thereafter served a notice of default and termination of the lease upon the debtor/lessee .  The debtor/lessee thus sought a preliminary injunction seeking to prevent the lessor from drawing upon the letter of credit.  <u>Id.</u> at 327-328.

The Bankruptcy Court for the District of New Hampshire held that the debtor had "exhibited a likelihood of success on the merits."  The court explained that "[t]he Bankruptcy Code embraces the policy of preventing the enforcement of <u>ipso facto</u> clauses, which automatically terminate in the event of a bankruptcy filing."  <u>Id.</u> at 329(citing 3 COLLIER ON BANKRUPTCY ¶ 365.05[4] (Lawrence P. King ed., 15th Ed. 2001)).  The court maintained that the evidence showed that the only reason given for the beneficiary/lessee's attempt to draw upon

the letter of credit was the debtor/lessor's filing for bankruptcy.  Since "[t]he Code invalidates an ipso facto bankruptcy filing as the basis for default", the court determined that "as a matter of federal bankruptcy law, the Debtor upon filing was not in default under the terms of its Lease."  As a result, the court held that the beneficiary/lessor "did not have a basis upon which to issue the Notices upon Debtor..."  Id.

This court respectfully disagrees with the Bankruptcy Court for the District of New Hampshire[2] and concludes that the bankruptcy court properly concluded that § 365(e)(1) does not prohibit Seacor from demanding payment from Regions under a letter of credit.  This court must first "start, as always, with the language of the statute." Dean v. United States, —,—, 129 S.Ct. 1849, 1853, 173 L.Ed.2d 785 (2009).  Section 365(e)(1) provides that "an executory contract... of the debtor [or any right or obligation under such contract]... may not be terminated or modified..." due to an ipso facto clause.  11 U.S.C. § 365(e)(1)(emphasis added).  There is no question that the Bender/Seacor Contract is an executory contract "of the debtor."  However, there is no evidence before this court that by requesting a draw from the letter of credit, Seacor is attempting to terminate the Bender/Seacor Contract or any terms of that underlying contract because of the ipso facto clause.[3]  Furthermore, this court also sees no evidence that Seacor is

---

[2] This court also questions whether Metrobility is still good law in light of Liberty Mut. Ins. Co. v. Greenwich Ins. Co., 417 F.3d 193, 198-199 (1st Cir. 2005).

[3] Regions argues that "[t]he plain language of the Bender-Seacor Contract and the Letter of Credit reveals... that Seacor could draw under the Letter of Credit only if Seacor terminated, in full or in part, the Bender-Seacor Contract..." (Doc. 22, p. 11). This court disagrees.  The letter of credit provides that Seacor may draw on this letter of credit if a "statement purportedly signed by an authorized official of Seacor" provides, in relevant part, that:

> The undersigned, an officer or authorized agent of Seacor [], hereby certifies that an undisputed event of default by Bender [] has occurred and is continuing under Article 12(a) of [the Bender/Seacor Contract]... and that [Bender] has been

attempting to modify the Bender/Seacor Contract by requesting a draw from the letter of credit due to the ipso facto clause.[4]  On the other hand, any modification or termination of the letter of credit is not barred by Seacor's reliance of an ipso facto provision since the letter of credit is not "of the debtor."  The express language of the statute provides that the executory contract must be "of the debtor," and the Court of Appeals for the Eleventh Circuit maintains that a letter of credit and its proceeds are not property of the debtor's estate.  See Am. Bank of Martin County v. Leasing Serv. Corp. (In re Air Conditioning, Inc. of Stuart), 845 F.2d 293, 296 (11th Cir. 1988)("...neither a letter of credit nor its proceeds are property of the debtor's estate.").[5]

---

notified in writing of such default and all applicable cure and/or grace periods with respect to such default have expired..."

(Doc. 1-1, p. 93).

The express words of the letter of credit do not require Seacor to terminate the underlying contract in order to draw upon the letter of credit.  Instead, it merely needs to provide notice that an undisputed event of default has occurred under Article 12(a) of the underlying contract.  Furthermore, Article 12(a) does not require Seacor to terminate the contract if an event of default occurs, rather terminating all or part of the contract is entirely discretionary. (See Doc. 1-1, p. 58)(Seacor "may, by written notice to [Bender] terminate all or any part of" the underlying contract" (emphasis added)).

[4] Bender asserts that Seacor's declaration of default under the Bender/Seacor Contract due to the filing of the bankruptcy violates § 365(e)(1).  (Doc. 6, p. 16).  However, unless declaring default automatically terminates the underlying contract or automatically modifies the rights and obligations of the underlying contract, the mere declaring of default does not in itself violate § 365(e)(1).  See Liberty Mut. Ins. Co., 417 F.3d at 198("[Section 365(e)(1)] prevents an executory contract or lease from being automatically terminated or modified by virtue of the other party's filing for bankruptcy.").  According to the Bender/Seacor Contract, Seacor may only terminate all or part of the contract upon written notice to Builder seeking termination, and there is no evidence before this court that Seacor wished to terminate all or part of the underlying contract.  (See Doc. 1-1, p. 58).

[5] Regions argues that "Section 365(e)(1)(B) is clause-centric and applies whenever the creditor relies on the ipso facto clause in a contract **of the debtor** during a bankruptcy, even if the creditor is seeking to obtain payment under a letter of credit."  In other words, "Section 365

Therefore, the express words of § 365(e) lead this court to conclude that Seacor can use an ipso facto clause against Regions in seeking payment on a letter of credit.[6]

This conclusion is further supported by the "independence principle" which provides that the letter of credit is a contract between Regions and Seacor that is independent from the underlying contract between Bender and Seacor and should be treated as such. Under Alabama law, "'[a] letter of credit transaction typically includes three separate commitments: (1) the applicant's agreement with the bank, which obligates the bank to issue the letter and obligates the applicant to reimburse the bank; (2) the bank-beneficiary relationship, i.e., the letter of credit itself; and (3) the applicant-beneficiary relationship, i.e., the underlying contract.'" Diamond v. Bank of Ala., – So.3d –, 2009 WL 4015644, at *9 (Ala. 2009)(quoting S. Energy Homes, Inc. v. AmSouth Bank of Ala., 709 So.2d 1180, 1185 (Ala. 1998)(emphasis added)). "The letter-of-credit transaction is essentially an independent contract between the issuer [Regions] and the beneficiary [Seacor]." S. Energy Homes, Inc., 709 So.2d at 1185; see Banco Gen. Runinahui, S.A. v. Citibank Int'l, 97 F.3d 480, 482 (11th Cir. 1996)("The key to the commercial vitality of the letter of credit is its independence: it is wholly separate and distinct from the underlying

---

expressly voids any attempts by a creditor to terminate or modify rights affecting the debtor based on an ipso facto clause if the clause is contained in an executory contract 'of the debtor.'" (Doc. 20, p. 19). Despite Regions' arguments to the contrary, Section 365(e) does not expressly void any attempts to modify rights "affecting the debtor." The statute expressly provides that a creditor may not terminate or modify "any right or obligation" under "an executory contract... of the debtor." Regions' interpretation of the statute is much too broad.

[6] Furthermore, "[t]his same result follows when one considers the purpose of the section." Liberty Mut. Ins. Co., 417 F.3d at 198. The purpose of this section "– avowed in both legislative history and case law– is to protect the bankruptcy estate, primarily against the loss of contractual rights that the estate might choose to assume and reaffirm." Id. at 199(citations omitted). Determining that Regions is not barred from paying Seacor under the letter of credit due to § 365(e) does not modify the rights of Bender's estate against Seacor or prevent the estate from reaffirming any contractual rights it may have under its policies with Seacor.

contract."). As a result, "[i]n these transactions, the issuer must honor the drafts or other demands for payment upon compliance with the terms of the letter of credit, which exist independently from the underlying transaction." S. Energy Homes, Inc., 709 So.2d at 1185; see also Banco Gen., 97 F.3d at 482("When the beneficiary submits documents to the issuing/confirming bank, the bank's only duty is to examine the documents and determine whether they are in accordance with the terms and conditions of the credit. If the bank finds the documents to be conforming, it is then obligated to honor a draft on the credit, independent of the performance of the underlying contract for which the credit was issued."). In sum, this court's conclusion that Seacor can use an ipso facto clause against Regions in seeking payment on a letter of credit not only rests on the express words of § 365(e) but also rests on the proposition that the letter of credit is an independent contract between Regions and Seacor that happens to be triggered by Bender's bankruptcy filing.

In light of the foregoing, this court finds that the bankruptcy court properly found that § 365(e)(1) does not prohibit Seacor from demanding payment from Regions. As a result, this court finds that Bender's request for an injunction on § 365(e) grounds fails to state a claim upon which relief can be granted and is due to be dismissed.

## B. 11 U.S.C. § 362(a)(6)

Bender alternatively asserts that "the notice given by Seacor to Bender after the Petition Filing Date was an action in violation of the automatic stay of Section 362(a)(6)" and that "[i]n the Eleventh Circuit, violations of the automatic stay are void and without effect." As a result, Bender argues that "[i]f the notice was void as a violation of the stay, then the required certification by the authorized representative of Seacor... is incorrect or false because the notice

Seacor sent was void." (Doc. 6, pp. 17-18). Because the notice sent by Seacor to Regions was incorrect, Bender asks this court to enjoin Seacor from receiving and Regions from giving any payments under the line of credit.

This court is not persuaded by Bender's arguments. Again, a court must first "start, as always, with the language of the statute." Dean v. United States, 129 S.Ct. at 1853. The filing of an involuntary petition "operates as a stay, applicable to all entities, of... any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(6). As the bankruptcy court correctly pointed out, the notice sent from Seacor to Bender could violate the stay as "Seacor cannot proceed in the bankruptcy case to take action to recover its alleged claim against Bender without relief from the stay."[7] (Doc. 2-1, p. 199). However, because a line of credit is not property of Bender's estate, Seacor's notice to Regions requesting a draw on the line of credit is not in itself a violation of the automatic stay. See In re Air Conditioning, Inc. of Stuart, 845 F.2d at 296("...neither a letter of credit nor its proceeds are property of the debtor's estate.").

Section 105 of the Bankruptcy Code gives discretion to the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As explained above in regards to § 365(e), the letter of credit and the underlying contract are to be treated as separate from one another. If the letter of credit itself violated the automatic stay, then it would be proper for the bankruptcy court to enjoin such a

---

[7] The bankruptcy court correctly stated that it could not at this time conclude that Seacor's actions violated the automatic stay as that motion was not currently in front of the court. (Doc. 2-1, p. 199).

17

transaction.  However, since this court concludes as a matter of law that the notice sent by Seacor to Regions does not in itself violate the automatic stay as the letter of credit is not property of Bender's estate, any disputes over the adequacy of that notice should be before the District Court for the Northern District of Alabama which currently presides over the dispute concerning the line of credit between Regions and Seacor.  For example, if the bankruptcy court were to conclude at a later date that Seacor's notice to Bender violated the automatic stay and thus is void, the District Court for the Northern District of Alabama would then be the proper court to determine what the effect, if any, that finding would have on the notice sent by Seacor to Regions.[8]

In light of the foregoing, this court agrees with the bankruptcy court that it is not proper for the bankruptcy court to enjoin two non-debtor parties from performing their duties under a contract which is not estate property. Therefore, this court concludes that Bender's request for an injunction on § 362 grounds fails to state a claim and must be dismissed.

---

[8] This reasoning also applies to Regions' "material fraud" argument pursuant to Alabama law.  (See Doc. 20, p. 29).  Section 7-5-109(b) of the Alabama Code gives the discretion to a court of competent jurisdiction to enjoin a payment under a letter of credit where "honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant." Ala. Code § 7-5-109(b).  A "[m]aterial fraud by the beneficiary occurs only when the beneficiary has no colorable right to expect honor and where there is no basis in fact to support such a right to honor." Ala. Code § 7-5-109(b), Official Comment 1.  Regions asserts that the notice it received from Seacor was fraudulent because Seacor has no "colorable right to payment" because the notice sent by Seacor to Bender is void and without effect thus Seacor could not certify that it had notified Debtor of the default.  (Doc. 20, p. 31).  This argument is a defense of Regions as to the adequacy of the notice that was sent by Seacor to Regions. Therefore, if the bankruptcy court determines at a later date that Seacor's notice to Bender violated the automatic stay and thus is void, the District Court for the Northern District of Alabama is the proper court to determine whether the bankruptcy court's finding rises to the level of a material fraud under Alabama Code § 7-5-109(b).

## CONCLUSION

For the reasons stated herein, the court finds that the order of the U.S. Bankruptcy Court for the Southern District of Alabama in Adversary Proceeding 09-01064, Bankruptcy Case No. 09-12616, granting defendant Seacor Marine, LLC's motion to dismiss the debtor's complaint seeking an injunction, is due to be, and is hereby, **AFFIRMED**.  Regions' and Bender's motion for oral argument (Doc. 23 & 26) and Regions' motion to compel mediation (Doc. 32) are therefore **MOOT**.

**DONE and ORDERED** this 2nd day of March, 2010.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE